OPINION OF THE COURT
Saxe, J.
This appeal requires us to decide whether spoliation sanctions were merited for the failure of defendant City to take steps to prevent the automatic destruction of a recorded radio run that could have either confirmed or called into question its asserted “emergency operation” affirmative defense under Vehicle and Traffic Law §§ 114-b, 1103 and 1104. To decide whether this failure constituted spoliation, we must determine the proper legal standards to be applied where the destroyed evidentiary material at issue is an audiotape of a radio communication. In particular, we must decide whether this spoliation claim can be fully addressed with the established New York spoliation doctrine, or whether we should apply, in this context, the Zubulake standard regarding spoliation of discoverable electronically stored information (ESI) (see Zubulake v UBS Warburg LLC, 220 FRD 212 [SD NY 2003]), which has already been adopted in this Department in cases involving ESI discovery (see U.S. Bank, N.A. v GreenPoint Mtge. Funding, Inc., 94 AD3d 58 [1st Dept 2012]; VOOM HD Holdings LLC v EchoStar Satellite L.L.C., 93 AD3d 33 [1st Dept 2012]; Ahroner v Israel Discount Bank of N.Y., 79 AD3d 481 [1st Dept 2010]).
Facts
On June 30, 2009, a New York City Police Department (NYPD) vehicle operated by Police Officer Matthew Peacock col *18 lided with a vehicle operated by defendant Geraldo Falcon, mounted a nearby sidewalk, and struck five pedestrians, including plaintiffs Kevin Strong, Miguel Carrasquillo, and De Fa Chen. Their three separate personal injury actions, seeking money damages from defendants City of New York, Officer Peacock and Geraldo Falcon, have been consolidated for trial.
Plaintiff Strong filed his notice of claim on July 9, 2009, and commenced an action initially against defendant Falcon alone. On July 29, 2009, before any municipal defendant could be joined as a party, Strong brought a motion by order to show cause for an order compelling the NYPD to provide copies of Sprint reports, radio calls, and the call log for the 30 minutes preceding the accident. Although that motion was withdrawn on November 19, 2009, the record contains an affidavit of service by counsel indicating that the order to show cause and supporting papers were served on the NYPD on July 31, 2009.
Following his General Municipal Law § 50-h hearing on September 7, 2009, Strong served an amended verified complaint dated September 10, 2009, naming the City and Officer Peacock, in addition to Falcon, as defendants. The City joined issue on September 21, 2009, at which time it interposed the emergency operation defense, essentially claiming that Officer Peacock’s vehicle was an authorized emergency vehicle engaged in an emergency operation at the time of the accident, and therefore, the City could only be held liable if Peacock acted with reckless disregard for the safety of others.
The Carrasquillo plaintiffs filed their notice of claim on September 1, 2009, and Miguel Carrasquillo’s 50-h hearing was held on December 7, 2009. The Carrasquillos commenced their action against all three defendants on March 31, 2010. When the municipal defendants joined issue in April 2010, their answer also pleaded the emergency operation defense.
Plaintiffs’ disclosure demands served on the municipal defendants began with Strong’s demand for a bill of particulars from the City as to its affirmative defenses, dated June 21, 2010, and his notice for discovery and inspection, dated June 23, 2010. Among Strong’s discovery requests was a demand for audiotapes of the alleged emergency being responded to at the time of the accident, and the radio dispatcher calls and call logs for the emergency operation and accident. A discovery order dated November 17, 2010 directed the City to comply with Strong’s discovery requests. The City’s response, dated March 22, 2011, provided some reports and agreed to turn over a copy *19 of a 911 call, but did not include any recordings or transcriptions of the transmission that Officer Peacock allegedly relied on to justify proceeding in an emergency fashion.
Underlying Discovery Motion
In a motion dated May 31, 2011, Strong and the Carrasquillos asked for an order precluding the City and Officer Peacock from offering particulars at trial in support of their emergency operation defense, based on the City’s failure to comply with plaintiffs’ discovery demand. In opposition, the City submitted the affidavit that gave rise to the spoliation claim at the heart of this appeal. In that affidavit, NYPD supervising police communication technician Awilda DeJesus explained that any recording of communications between a patrol unit and the commanding officer for the unit would be maintained for 180 days and then deleted, and therefore she could not locate any such recording.
DeJesus first said that she was unable to find any “Sprint reports,” which she described as “documents containing information from NYPD audio recordings of 911 calls and radio runs, reduced to writing, [and] maintained on the Tapes and Records Unit’s computer database,” regarding a 10-85 radio code issued on June 30, 2009, indicating that an additional unit was needed at 10th Street and Avenue D. She then explained that a communication between a patrol unit and its commanding officer directing that the unit respond to a specified location would not result in a Sprint report but, rather, in a radio run audio recording, and that such a radio run recording would have been maintained for 180 days and then deleted. DeJesus thus concluded that a radio run audio recording of the transmission by the commanding officer of Officer Peacock’s unit would have been deleted in the normal course of business 180 days after June 30, 2009.
Having learned for the first time from the DeJesus affidavit that any audio recording of the claimed radio communication between Officer Peacock and his commanding officer would have been automatically deleted after 180 days, plaintiffs requested, for the first time, in their reply papers on their motion, the sanction of an order striking the City’s emergency operation defense. As to the City’s assertion in opposition that no request had been made for such recordings until after the expiration of the 180-day period, plaintiffs pointed out that the claims and affirmative defense gave the City notice that such recordings would be relevant, and that, moreover, an order to *20 show cause prepared and served by Strong’s prior counsel on July 29, 2009 had requested that the NYPD be directed to provide copies of “sprint reports, including the recorded sprint report, 911 calls, radio dispatch calls, [and] call log” relating to the accident at issue.
First Order
The motion court granted plaintiffs’ motion to the extent of directing defendants to produce, “to the extent they exist[ed], unredacted memoranda, records and reports regarding the emergency Peacock was allegedly responding to at the time of the accident,” and precluding the City from introducing testimony as to the contents of the audio recording, since “other evidence of the emergency defendant City was responding to [was] available” (2011 NY Slip Op 32454[U], *4, 5 [2011]). Reargument Motion
The City moved for reargument with regard to the portion of the motion court’s order precluding it from introducing testimony as to the contents of the audio recording. It protested that plaintiffs had not asked for spoliation sanctions, and therefore it had had no opportunity to oppose such a request. Further, the City argued that it was improper for the motion court to rely on the July 29, 2009 order to show cause to establish the City’s obligation to retain radio run audio recordings from the date of the accident — first, because plaintiffs had failed to append an affidavit of service to the copy of that order to show cause they provided with the May 31, 2011 motion, and, second, because the July 2009 order to show cause had been withdrawn before it was decided.
In response to the City’s contention that plaintiffs’ moving papers did not include proof that the July 2009 order to show cause was ever served, Strong’s counsel asserted that on the adjourn date of the preclusion motion, August 10, 2011, he had handed up to the court and counsel a copy of the affirmation of service of the July 2009 order to show cause, showing service on the Police Department.
Order on Appeal
The motion court granted reargument and vacated the portion of its original order that precluded the City from introducing testimony as to the contents of the audio recording (2012 NY Slip Op 30280[U] [2012]). The court held that plaintiffs failed to show that the NYPD was on notice that such an audio recording might be relevant to a forthcoming lawsuit, citing the *21 lack of an affirmation of service attached to the submitted copy of Strong’s July 29, 2009 order to show cause, as well as his subsequent withdrawal of the order to show cause.
Discussion
To determine whether the sanction imposed by the motion court, or any sanction, was proper, we must first consider whether the City’s failure to prevent the automatic erasure of the radio run audio recording after 180 days constituted spoliation.
Initially, it is New York’s common-law doctrine of spoliation, rather than CPLR 3126, that we must consider, since CPLR 3126 covers refusal to comply with a discovery order or a willful failure to disclose, neither of which is applicable here. Despite some New York cases stating that only “willful, deliberate, or contumacious” destruction of evidence warrants the imposition of spoliation sanctions (see e.g. Kerman v Martin Friedman, C.P.A., P.C., 21 AD3d 997, 999 [2d Dept 2005]), this Court has, on many occasions, authorized the imposition of sanctions where the destruction of evidence was negligent rather than willful (see Adrian v Good Neighbor Apt. Assoc., 277 AD2d 146 [1st Dept 2000], lv dismissed 96 NY2d 754 [2001]; Sage Realty Corp. v Proskauer Rose, 275 AD2d 11 [1st Dept 2000], lv dismissed 96 NY2d 937 [2001]; Squitieri v City of New York, 248 AD2d 201 [1st Dept 1998]).
The earliest New York cases involving negligent spoliation concerned negligent destruction of allegedly defective equipment. In Squitieri v City (248 AD2d 201), for example, the City was sued by a sanitation worker injured by carbon monoxide poisoning caused by a defective street sweeping vehicle. The City disposed of the vehicle while the litigation was ongoing. Years later, it impleaded the manufacturer of the vehicle, but the third-party claim was dismissed because “the absence of the sweeper would prevent [the manufacturer] from countering the design defect claim with evidence that the City’s misuse, alteration, or poor maintenance of this particular sweeper was a proximate cause of Squitieri’s injuries” (id. at 203-204). This Court affirmed, explaining that “[spoliation sanctions such as [dismissal and preclusion] are not limited to cases where the evidence was destroyed willfully or in bad faith, since a party’s negligent loss of evidence can be just as fatal to the other party’s ability to present a defense” (id. at 203 [emphasis added]).
Sage Realty (275 AD2d 11) concerned the plaintiffs destruction of audiotape recordings of discussions that were at the *22 heart of the plaintiffs claims against their former attorneys. This Court affirmed the dismissal of the complaint for spoliation, citing Squitieri for the proposition that “willfulness or bad faith may not be necessary predicates” for spoliation sanctions under the common-law rule (id. at 16).
Accordingly, the negligent erasure of audiotapes can certainly give rise to the imposition of spoliation sanctions under New York’s common-law spoliation doctrine, if the alleged spoliator was “on notice [that] the [audiotapes] might be needed for future litigation” (Standard Fire Ins. Co. v Federal Pac. Elec. Co., 14 AD3d 213, 220 [1st Dept 2004]; Westbroad Co. v Pace El. Inc., 37 AD3d 300 [1st Dept 2007]; Enstrom v Garden Place Hotel, 27 AD3d 1084 [4th Dept 2006]; Lawrence Ins. Group v KPMG Peat Marwick, 5 AD3d 918, 920 [3d Dept 2004]; DiDomenico v C & S Aeromatik Supplies, 252 AD2d 41, 53 [2d Dept 1998]).
We reject the City’s assertion that it was not on notice that the recording might be needed for future litigation before it was erased. The City was placed, on notice of plaintiffs’ claim and its own claimed affirmative defense within the 180 days after the recording was made, by (1) the filing of plaintiff Strong’s notice of claim; (2) the evidence given at his 50-h hearing; and (3) if nothing else, by the City’s service of its answer to the Strong complaint on September 21, 2009, in which it actually raised the emergency operation defense, making any evidence tending to establish that defense highly relevant. The City therefore had the obligation to take steps to prevent the automatic erasure of any audio recording from that incident, and its failure to do so constituted spoliation.
In addition, plaintiffs established that the Police Department, the presumptive custodian of those records, received notice even before the City could be brought into the action, through the order to show cause served on the Police Department by Strong’s former lawyer, seeking copies of radio dispatch calls and reports relating to the accident. Although the affirmation of service of the order to show cause was not attached with the other attachments to Strong’s May 31, 2011 motion, his counsel explained, without dispute, that a copy of the affirmation of service, included in the record, was handed up to the court and counsel on the calendar date. And, while the order to show cause was ultimately withdrawn, service of it gave the Police Department notice that plaintiffs might need the type of audio recording at issue here.
*23 As the foregoing establishes, plaintiffs’ spoliation claim can be fully addressed under New York’s common-law spoliation doctrine. However, because plaintiffs rely exclusively on the Zubulake rule that “[o]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a ‘litigation hold’ ” to preserve evidence (220 FRD at 218), we briefly address the question of whether we need to import Zubulake’s rules into the established New York common-law rules as to spoliation of non-ESI evidence.
The cases in which this Court has explicitly adopted the Zubulake rulings have involved ESI discovery (see U.S. Bank, N.A. v GreenPoint Mtge. Funding, Inc., 94 AD3d 58 [2012]; VOOM HD Holdings LLC v EchoStar Satellite L.L.C., 93 AD3d 33 [2012]; Tener v Cremer, 89 AD3d 75 [1st Dept 2011]; Ahroner v Israel Discount Bank of N.Y., 79 AD3d 481 [2010]). The usefulness of the Zubulake standard in the e-discovery arena, is, as the VOOM Court observed, that it “provides litigants with sufficient certainty as to the nature of their obligations in the electronic discovery context and when those obligations are triggered” (93 AD3d at 36). At the same time, as the VOOM opinion also observed, Zubulake “is harmonious with New York precedent in the traditional discovery context” (93 AD3d at 36). This is an area that did not need greater certainty or clarification.
We are aware that a few recent decisions by this Court, in cases involving destruction of /zora-ESI evidence, quote the Zubulake or VOOM formulation, implicitly employing the federal standard for spoliation of non-electronic evidence (see New York City Hous. Auth. v Pro Quest Sec., Inc., 108 AD3d 471 [1st Dept 2013] [part of surveillance video destroyed]; Suazo v Linden Plaza Assoc., L.P., 102 AD3d 570, 571 [1st Dept 2013] [surveillance video automatically recorded over]; Harry Weiss, Inc. v Moskowitz, 106 AD3d 668, 669 [1st Dept 2013] [entire computer disposed of]). We nevertheless conclude that reliance on the federal standard is unnecessary in this context. Zubulake interpreted federal rules and earlier federal case law to adapt those rules to the context of ESI discovery. However, the erasure of, and the obligation to preserve, relevant audiotapes and videotapes, can be, and has been, fully addressed without reference to the federal rules and standards.
The elements of a spoliation claim under New York common law having been demonstrated; we turn to consideration of the appropriate sanction. Plaintiffs assert that the City’s emergency operation defense should be stricken or, alternatively, *24 that the City should be precluded from offering any evidence in support of the defense. We conclude that a less severe sanction would be appropriate. Nothing in the record supports an inference that the erasure of the audio recording sought here was willful or in bad faith such as would justify the striking of a pleading (see DiDomenico, 252 AD2d 41).
Preclusion, also a relatively severe sanction, is appropriate where “the defendants destroy[ed] essential physical evidence leaving the plaintiff without appropriate means to confront a claim with incisive evidence” (see Kerman, 21 AD3d at 999 [internal quotation marks omitted]). Here, the radio run audio recording is not key to the proof of plaintiffs’ case in chief, although, depending on its contents, it could have been relevant either to prove or help disprove defendant’s emergency operation defense. Plaintiffs’ inability to establish whether the missing evidence would have been helpful to them cannot serve to support the City’s opposition to sanctions, since that inability is the City’s fault, not plaintiffs’ (see Sage Realty, 275 AD2d at 17).
The City’s emergency operation defense can still be challenged through examination of the officers involved and their commanding officer. We therefore conclude that the preclusion of any evidence that establishes the defense would be excessive (see Alleva v United Parcel Serv., Inc., 102 AD3d 573 [1st Dept 2013], lv dismissed 21 NY3d 906 [2013]). The limited preclusion that the motion court ordered initially, preventing the City from introducing testimony as to the contents of the audio recording, is appropriate (see Baldwin v Gerard Ave., LLC, 58 AD3d 484 [1st Dept 2009]). If warranted, an adverse inference charge at trial may be an appropriate additional sanction (see Suazo, 102 AD3d at 571; Gogos v Modell’s Sporting Goods, Inc., 87 AD3d 248 [1st Dept 2011]).
Finally, since plaintiffs demonstrated that defendants did not comply with their discovery obligations under the initial order, we order the production of unredacted police accident reports to the extent not previously provided, and proper affidavits of compliance.
Accordingly, the order of the Supreme Court, New York County (Cynthia Kern, J.), entered February 7, 2012, which, to the extent appealed from as limited by the briefs, granted defendants-respondents’ motion to reargue a prior order imposing a preclusion as a sanction for spoliation of evidence, and, upon reargument, vacated the imposition of the sanction, and denied *25 plaintiffs’ cross motion seeking, inter alia, to strike certain affirmative defenses for failure to comply with discovery obligations, should be modified, on the law, to reinstate the spoliation sanction and to grant plaintiffs’ cross motion to the extent of directing the production of unredacted police accident reports to the extent not previously provided, and of proper affidavits of compliance, and otherwise affirmed, without costs. Appeal from order, same court and Justice, entered September 20, 2011, should be dismissed, without costs, as superseded by the appeal from the order entered February 7, 2012.
Mazzarelli, J.E, Andrias, Manzanet-Daniels and Gische, JJ., concur.
Order, Supreme Court, New York County, entered February 7, 2012, modified, on the law, to reinstate the spoliation sanction, and to grant plaintiffs’ cross motion to the extent of directing the production of unredacted police accident reports to the extent not previously provided and of proper affidavits of compliance, and otherwise affirmed, without costs. Order, same court and Justice, entered September 20, 2011, dismissed, without costs, as superseded by the appeal from the order entered February 7, 2012.